IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERRY WASHINGTON, Plaintiff, | CIVIL ACTION NO. 0:04-750-JFA-BM |
| v. | **REPORT AND RECOMMENDATION** |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, Defendant. | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 11, 2001, alleging disability as of September 11, 2001 due to a herniated disc. (R.pp. 48-52, 55, 177-180). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 14, 2002. (R.pp. 197-224). The ALJ thereafter denied Plaintiff's claims in a decision issued May 31, 2003. (R.pp. 13-26). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of



the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).





**Discussion**

A review of the record shows that Plaintiff, who was thirty (30) years old at the time he alleges he became disabled, has a high school education with past relevant work experience as a laborer/landscaper and foreman laborer/landscaper. (R.pp. 68, 199-200). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform his past relevant work, he nevertheless retained the residual functional capacity to perform a full range sedentary work activity,[1] and was therefore not disabled. (R.pp. 25-26).

Plaintiff asserts that in reaching this decision, the ALJ erred by finding that Plaintiff's impairment did not meet the requisite level of severity for a finding of disability. Plaintiff also argues that "new evidence substantiates a finding that [Plaintiff] does not have a residual functional capacity for a full range of sedentary work activity," citing to forms filled out by Dr. Eugene Eline in July and September, 2004. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act

[1]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).





during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

Plaintiff's medical record reflects that on September 9, 2001 he was diagnosed with sciatica[2] with posterior buttock pain radiating down into the posterior aspect of his left calf. However, Plaintiff was not then having any numbness or weakness, and he was advised by Dr. Sean Halligan (the examining physician) that he should "rest for the next day or two" and then return to work as tolerated. (R.pp. 135-136). However, Plaintiff returned to the hospital emergency room five days later, where he was examined by Dr. Leland Stoddard. X-rays of Plaintiff's spine, left hip, and thigh were normal, and Dr. Stoddard diagnosed Plaintiff with left-sided sciatica and a possible trochanteric bursitis. Plaintiff was treated with a Depo Medrol injection and was referred for an MRI. (R.p. 162). Dr. Stoddard subsequently assessed Plaintiff's MRI results as a disc herniation at L4-5, and on September 28, 2001 noted that he was going to try an epidural steroid to see if that would help Plaintiff's pain, that Plaintiff was an excellent candidate for surgery, and that Plaintiff would "remain out of work for the time being." (R.p. 160).

Plaintiff was next seen by Dr. Susan Hohenwarter on October 9, 2001 at the Beaufort Memorial Hospital Pain Clinic. Dr. Hohenwarter noted on examination that Plaintiff had good strength bilaterally, with positive straight leg raising on the left side. Plaintiff was able to only raise his leg 30° before pain started, and he was administered an epidural injection before being discharged in stable condition. (R.pp. 131-132). Plaintiff was subsequently seen again on October 16, 2001 by

---

[2]Sciatica is defined as "[a] syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatica nerve." Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1493.





Dr. Stoddard, who noted improvement but opined that Plaintiff would probably need three (3) more months to recover before returning to work. Dr. Stoddard noted that Plaintiff's pain was largely confined to an area about the left knee, but that his EHL strength was normal, straight leg raising caused a little hamstring tightness but no obvious back pain, and that generally Plaintiff seemed to be responding well to treatment. (R.p. 159).[3]

Plaintiff's medical records indicate that by November 2001 he was interested in pursuing surgery, and he was referred to Dr. Jeffrey Reuben. (R.pp. 128-129, 158). On Dr. Reuben's recommendation, a new MRI was performed, which revealed a focal disc bulge at L4-5. Dr. Reuben then decided to schedule Plaintiff for surgery. (R.pp. 126, 149, 155-157). Prior to surgery being performed, however, Plaintiff's medical records were reviewed by Dr. William Cain at the request of the Commissioner. Dr. Cain completed a physical residual functional capacity assessment on December 28, 2001 in which he found that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently, sit about 6 hours/stand about 6 hours in an 8 hour work day, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. (R.pp. 164-171).

Dr. Reuben thereafter performed surgery on the Plaintiff on January 27, 2002, following which Plaintiff stated that his preoperative leg pain was completely resolved. (R.pp. 118-

---

[3]In a "doctor's statement" form completed that date, Dr. Stoddard opined that Plaintiff had a severe limitation of functional capacity, and that he was incapable of minimum (sedentary) activity. Dr. Stoddard further indicated that Plaintiff would be totally disabled from performing work activity from September 8, 2001 to August 8, 2002, and would be under "partial disability" from March 8, 2002 to "present". It is unclear how Dr. Stoddard arrived at these dates, or whether this is some type of scrivener's error, because the form itself is dated October 16, 2001. (R.p. 108). This form is also in conflict with Dr. Stoddard's treatment note of October 16, 2001, in which he states that Plaintiff was disabled at that time, but that he would consider returning Plaintiff to work in three months. (R.p. 159).





124). Upon discharge, Plaintiff's pain was well controlled and Dr. Reuben opined that his only restrictions were no heavy lifting, bending, twisting or turning. Plaintiff was instructed to exercise with walking and was prescribed pain medication as needed. (R.p. 117). By February 13, 2002 Plaintiff reported complete resolution of his left leg pain and only some continuing back pain. When Dr. Reuben recommended that Plaintiff begin physical therapy, Plaintiff declined. (R.p. 146).

By March 13, 2002, Dr. Reuben noted that Plaintiff was continuing to complain of some mild low back discomfort and some mild lower extremity pain, although Plaintiff had a negative straight leg raise and good motor and sensory function. Physical therapy was again recommended, but Plaintiff stated he could not afford it. (R.pp. 144-145). By April 2, 2002 Plaintiff indicated that he was continuing to have mechanical back discomfort and some left leg tightness. However, Dr. Reuben noted that Plaintiff's radicular symptoms had resolved, and opined that Plaintiff could return to light work duty, with the further comment that he would reassess Plaintiff in two months to see if he could return to full duty as a landscaper. (R.p. 143).

On June 24, 2002 Plaintiff was seen in the emergency room for lower back pain. He was assessed by Dr. Saeed Rehman, who found on examination that Plaintiff had full strength in his extremities with normal reflexes, normal sensation, a negative straight leg raising test, with some paraspinious muscle spasm. He assessed Plaintiff with chronic back pain with acute exacerbation, and administered medication. (R.pp. 114-115). Plaintiff was again examined by Dr. Reuben on July 1, 2002, who found that Plaintiff had good motor and sensory function in both legs with a negative straight leg raise. Dr. Reuben further noted that an MRI showed good decompression of the nerve roots with no evidence of recurring disc herniation, and that Plaintiff was "essentially off of all of his medications". Dr. Reuben also noted in his report that he was "uncertain why [Plaintiff] feels





he should have continued pain and unfortunately I do feel that [Plaintiff] has a decreased affect. When I talk to him about this he states he is not depressed and he does not want to talk to anyone about this." (R.p. 139). Plaintiff did, however, finally agree to undergo physical therapy, and on his first visit on August 8, 2002 the physical therapist noted that Plaintiff had positive Waddell signs in all five modes of lumbar range of motion.[4] Plaintiff was subsequently discharged on September 5, 2002 because of poor attendance. (R.pp. 109-110, 112).

Plaintiff did not seek medical evaluation again until almost a year later, August 1, 2003, when he was seen by Dr. Joseph Gabriel. Dr. Gabriel found on examination that Plaintiff had normal range of motion of his lumbar spine, full strength in his muscle groups with normal reflexes and pulses, tenderness in the L4-S1 region, and an antalgic gait. Plaintiff was prescribed some medication and referred for EMG and nerve conduction studies. (R.p. 191). A nerve root injection was subsequently performed on September 9, 2004. (R.pp. 194-196).

After review of this medical evidence and consideration of Plaintiff's subjective testimony at the hearing, the ALJ determined that Plaintiff could not return to his past relevant work, which required heavy exertional demands. However, after noting that Plaintiff's medical records indicated he could perform light work at a less demanding level, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of sedentary work activity. (R.pp. 24-25). This finding is supported by substantial evidence in the record. Indeed, the medical reports

[4]Waddell signs are responses to physical testing which indicate a nonphysiologic basis for a patient's pain such as superficial tenderness and overreaction during examinations. "Patients who are more likely to demonstrate such non-organic signs include patients with work-related injury or those involved in litigation related to their injury." S.Craig Humphreys, M.D., & Jason C. Eck, M.S., Clinical Evaluation and Treatment Options for Herniated Lumbar Disc, American Family Physician, Feb. 1, 1999, at 5-6, http://www.aafp.org/afp/990201ap/575.html.





and opinions of Dr. Reuben, Dr. Rehman, Dr. Gabriel and Dr. Cain provide substantial evidence to support the ALJ's finding that Plaintiff had *at least* this level of physical capacity. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance accorded to treating physician's opinion]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. While Plaintiff generally complains that the ALJ's consideration of the medical evidence was improper, the undersigned can find no reversible error in the ALJ's treatment of this evidence, or in his consideration of this evidence in conjunction with the Plaintiff's subjective testimony. See generally, Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving his disability]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]. While Plaintiff may argue that some of the medical evidence supports a more restricted RFC, the ALJ was within his authority to evaluate this evidence and reach a contrary conclusion. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility





of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Plaintiff's general and conclusory complaint that he should have been found to meet a listing in the Listings of Impairments[5] is also without merit. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."]. Plaintiff has provided no specifics to support this claim. Sullivan, 493 U.S. at 530 [Plaintiff has the burden of showing that his impairment matches a Listing]. This claim is without merit.

Finally, Plaintiff argues that additional medical evidence from July and September 2004 supports his claim that he is disabled. However, in addition to not having been submitted to the Commissioner for consideration,[6] it has not even been presented to this Court for consideration. There is no basis on which this Court can find that this purported evidence relates to the applicable time period, or provides any rationale for overturning the decision in this case. *Cf.* Szubak v. Secretary of Health and Human Services, 745 F.2d 831, 833 (3d Cir. 1984). If Plaintiff's condition has significantly deteriorated since the ALJ's decision, he may of course file a new application for benefits. Breedlove v. Callahan, No. 97-7024, 1997 WL 572145 at *2 (10th Cir. Sept. 8, 1997); Skeens v. Secretary of Health and Human Services, 737 F.Supp. 362, 366 (W.D.Va. 1990); *cf.* 20 C.F.R. § 404.976(b)(1) (2004).

---

[5]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan, 493 U.S. at 530. A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

[6]From Plaintiff's own description of this evidence, it is dated eight to nine months after the Appeals Council denied review of the ALJ's decision.



**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

November 1, 2005